UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|                     ) | |
|     *ex. rel.*         ) | |
|                     ) | |
| ANTHONY HEAD          ) | |
|                     ) | |
|     Plaintiff,     ) | |
|                     ) | |
|     v.             ) | Civil Action No. 05-317 (GK) |
|                     ) | |
| THE KANE COMPANY, et. al., ) | |
|                     ) | |
|     Defendants.    ) | |
|                     ) | |

**MEMORANDUM OPINION**

Relator Anthony Head ("Relator" or "Head") brings this qui tam suit under the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"), on behalf of the United States against Defendant Kane Company ("Defendant" or "Kane Company"), a Maryland corporation that specializes in providing moving services and other logistics to government agencies. Also named as Defendants are Office Movers, Inc., a subsidiary of Kane Company, and Management Alternatives, Harris Design Group, Settles Associates, and Perara Group, which subcontracted work to Kane Company. The United States intervened as Plaintiff in this suit on March 26, 2009. On July 24, 2009, Defendant Kane Company filed an Answer in which it asserted twelve counterclaims against Relator Head.

This matter is before the Court on the United States' Motion to Strike Affirmative Defense and to Dismiss Defendants' Counterclaims [Dkt. No. 60], and on Relator Head's Motion to

Dismiss Defendant's Counterclaims [Dkt. No. 59]. Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons set forth below, the Motion to Strike is **granted**, and the Motions to Dismiss Defendant's Counterclaims are **granted** in part, and **denied** in part. Defendant Kane Company is **granted** leave to amend counterclaims one through four, six, seven, nine, and ten.

I.   **BACKGROUND**

Relator Head is a former employee of Defendant Kane Company. From 1997, when he was first hired, until his termination for poor performance on January 10, 2005, Head held a number of sales positions. His last position, to which he was promoted in 2003, was Vice President for Government Sales. Compl. ¶ 13. On February 11, 2005, based on his experience with Defendants' practices in bidding on and performing government contracts, Head filed a sealed Complaint in this Court alleging a number of violations of the FCA.

First, Head alleges that Kane Company knowingly submitted bills, invoices, and demands for payment to federal agencies for contracts entered into pursuant to the Services Contract Act, 41 U.S.C. §§ 351-58 ("SCA"), without paying its employees the prevailing wage required under that statute. Defendants Management Alternatives, Harris Design Group, and Settles Associates, which were the general contractors on these contracts, are alleged to

-2-

have falsely certified their and subcontractor Kane Company's compliance with the SCA. Compl. ¶ 4-6.

Second, Head alleges that Defendants defrauded federal agencies by billing the same hours worked by employees to two or more projects, thus charging government clients for hours worked on other projects. Compl. ¶ 7. Third, Head alleges that Defendant Kane Company submitted General Services Administration ("GSA") schedules for contracts which included prices higher than those charged to private sector clients, contrary to GSA's "best price" requirement. Compl. ¶ 8. Fourth, Head alleges that Defendant Office Movers, Inc. improperly relied upon Defendant Perara Group's Section 8(a) status under the Small Business Act, 15 U.S.C. § 631 et seq. ("SBA"), to procure contracts for which it was not otherwise eligible. Compl. ¶ 9. Finally, Head alleges that Defendant Kane Company, by and through its officers, knowingly double-charged energy surcharges to federal agencies. Compl. ¶ 10.

Approximately two weeks after filing his sealed Complaint, Head and Kane Company entered into a Separation Agreement arising out of Head's termination. Def.'s Answer, Ex. A. First, ¶ 3 of the Agreement provided that any correspondence or other records concerning the Company's operation was the sole property of Kane Company, and Head warrantied that he had turned over, or promptly would turn over, any such property in his custody or control. Second, the parties agreed in ¶ 4 that they would not "make any

oral or written statement or take any other action which disparages or criticizes the other party." Id. ¶ 4.  Third, in ¶ 10 of the Agreement, Head and Kane Company released each other from claims and liabilities arising from the terminated employment relationship and agreed to indemnify each other for damages arising out of a breach of the Agreement.  Id. ¶¶ 6, 8.

In March 2009, after conducting its own investigation into these allegations for more than four years, the United States intervened as Plaintiff.  In response, Defendant Kane Company raised two affirmative defenses against the Government:  laches, and the applicability of the statute of limitations to those contractual dealings that occurred more than ten years ago.  Kane Company also counter-claimed[1] against Head for defamation, tortious interference with economic advantage, intentional interference with contract, intentional interference with prospective economic advantage, malicious prosecution, libel, slander, breach of contract, and fraud.[2]  Finally, Defendant sought contractual

---

[1] Because Head has sued on behalf of the United States, the real party in interest, Defendant's "counterclaims" could be considered cross-claims or even third-party claims.  The classification, however, is not outcome-determinative.  United States v. Bill Harbert Intn'l Constr., Inc., 505 Fed. Supp. 2d 20, n.1 (D.D.C. 2007).

[2] As Head points out in his Motion to Dismiss, under Maryland law a claim for "tortious interference with economic advantage" is properly called "tortious interference with economic relations." Rel.'s Mot. to Dismiss 16-17.  Defendant Kane Company has not clarified whether its counterclaims are brought under District of
(continued...)

indemnification from Head for any liability under the FCA, pursuant to ¶ 10 of the 2005 Separation Agreement, and injunctive relief against any further violation of the Agreement.

The United States moved to dismiss the affirmative defense of laches, arguing that it is not applicable to the United States, and to dismiss the counterclaims against Head as void against public policy.[3]  Head also moved to dismiss the counterclaims as void against public policy and for a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.  MOTION TO STRIKE AFFIRMATIVE DEFENSE OF LACHES

In its Answer to the United States' Intervenor Complaint, Kane Company argues that the government has "slept on its rights" by waiting four years after Head filed suit to intervene, and therefore is barred from pursuing this action.  Def.'s Answer 6. The United States moved under Federal Rule of Civil Procedure 12(f) to strike this defense.

Motions to strike are not generally favored.  However, "[t]he motion should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case

---

[2](...continued)
Columbia or Maryland law.  For the purposes of ruling on the Motions, the Court will adopt the terminology used by Defendant in its counterclaims.

[3] The Government invoked Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in its Motion to Dismiss, but the argument in its supporting papers was limited to the public policy issue.

would avoid wasting unnecessary time and money litigating the invalid defense." <u>SEC v. Gulf & Western Indus., Inc.</u>, 502 F. Supp. 343, 344 (D.D.C. 1980) (citation omitted).

It is well established that "laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." <u>Utah Power & Light Co. v. United States</u>, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). <u>See also</u> <u>United States v. Summerlin</u>, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) (it is "well settled that the United States is not ... subject to the defense of laches in enforcing its rights"); <u>Illinois Cent. R.R. Co. v. Rogers</u>, 253 F.2d 349, 353 (D.C. Cir. 1958) ("No rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right.") (internal quotation omitted); <u>United States v. Philip Morris, Inc.</u>, 300 F. Supp. 2d 61, 72-73 (D.D.C. 2004) (discussing rule in <u>Summerlin</u>).

In this case, the United States is clearly acting in the public interest by seeking to hold Defendants accountable under the FCA. Furthermore, Kane Company failed to present any argument in opposing the Motion to Strike; therefore the issue may be properly regarded as conceded. <u>See</u> <u>FDIC v. Bender</u>, 127 F.3d 58, 67-68 (D.C. Cir. 1997). For these reasons, the doctrine of laches is held to be inapplicable to this claim and the United States' Motion to Strike is **granted.**

## III. MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

The United States and Head also move to dismiss Defendant's twelve counterclaims against Head.   Both argue that the counterclaims are void as against public policy, since they could have the effect of discouraging private citizens from filing qui tam suits under the False Claims Act.   In addition, Head argues that Kane Company has failed to plead sufficient facts in support of its counterclaims, and asks this Court to dismiss them under Federal Rule of Civil Procedure 12(b)(6).[4]

### A.   Counterclaims Which Are Dismissed as Void Against Public Policy

---

[4] Head also argues that those counterclaims not related to enforcement of the Separation Agreement are "contractually barred," as Kane Company released Head from all "actions, causes of action, suits . . . known or unknown, suspected or unsuspected, arising from, in connection with, or in any way pertaining to [his] employment with [Defendant]." Rel. Head's Mot. 9-10 (citing ¶ 6 of the 2005 Separation Agreement, Def.'s Opp'n Ex. A).  This argument is limited to counterclaims one through seven and ten, as counterclaims eight, nine, eleven, and twelve are related to enforcement of the Agreement.

However, counterclaims one through seven and ten--which include those for defamation, tortious interference with economic advantage, intentional interference with contract, intentional interference with prospective business advantage, malicious prosecution, libel, slander, and fraud--are all based on alleged statements made by Head in the course of this proceeding or to third parties.  Kane Company does not make clear in its Opposition whether these statements allegedly occurred before or after Head's termination on January 10, 2005.  Thus, the argument will not be addressed until Defendant amends its counterclaims to meet the Rule 12(b)(6) standard.  Once sufficient facts have been pled, whether those counterclaims are "arising from, in connection with, or in any way pertaining to [Head's] employment," and thus contractually barred, will be considered.

The moving parties make two public policy arguments in support
of their Motions to Dismiss.  First, they argue that counterclaims
eight and nine (the two counterclaims for breach of the 2005
Separation Agreement) should be dismissed because the Agreement is
contrary to public policy.  Specifically, the moving parties argue
that a private agreement may not be enforced when its terms, which
here relate to the return of company property and to disparagement,
would have the effect of preventing individuals from furnishing
evidence to the government or making allegations under the FCA,
since this would unduly frustrate the Act's purpose.  Pl.'s Mot. 5-
11; Rel.'s Mot. 10-14.   Second, the movants argue in the
alternative that United States ex. rel. Miller v. Bill Harbert
Intn'l Constr., 505 F. Supp. 2d 20 (D.D.C. 2007) ("Harbert"),
compels dismissal of all of Defendant's counterclaims.

> **1.   Counterclaim Eight Is Dismissed as Void Against
>         Public Policy; Counterclaim Nine Is Not Dismissed
>         as Void Against Public Policy**

The movants argue that the Separation Agreement between Head
and Kane Company is unenforceable on grounds of public policy, and
therefore counterclaims eight and nine must be dismissed.
Counterclaim eight alleges breach of contract for Head's ongoing
failure to return an email to Kane Company, in violation of ¶ 3 of
the Separation Agreement.  The email, dated January 3, 2000, was
sent by Head to Mark Cavanaugh, Kane Company's Chief Financial
Officer at the time, and raised the issue of Kane Company's failure

to pay the wage determination.   Head filed the email in this proceeding as Exhibit 2 to his Complaint.   Counterclaim nine alleges breach of contract for Head's violation of ¶ 4 of the Agreement, which prohibits disparagement of Kane Company.   Kane Company alleges that Head made "oral and written disparaging comments about the company, its managements [sic] and its employees."   Def.'s Answer ¶¶ 68-71.

In the absence of an expression of Congressional intent to the contrary, a private agreement is unenforceable on grounds of public policy if its enforcement is clearly outweighed by a public policy against such terms.   Town of Newton v. Rumery, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); United States v. Northrop Corp., 59 F.3d 953, 958-59 (9th Cir. 1995) (discussing rule in FCA case where private agreement which provided for release of relator's claims was held unenforceable); Restatement (Second) of Contracts § 178(1) (2009).   The purpose of the FCA is "to discourage fraud against the government" and, "[c]oncomitantly, the purpose of the qui tam provision of the Act is to encourage those with knowledge of fraud to come forward."   Neal v. Honeywell, Inc., 826 F. Supp. 266, 269 (N.D. Ill. 1993) (citing H.R.Rep. No. 660, 99th Cong., 2d Sess., 22 (1986)).

Applying this standard, Defendant's counterclaim based on Head's ongoing failure to return the January 3, 2000 email to Kane Company is void as against public policy.   The FCA requires that

relators serve upon the United States "written disclosure of substantially all material evidence and information the person possesses" in order to enable the government's own investigation to proceed expeditiously.[5]  31 U.S.C. § 3730(b)(2) (2008).  Enforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the defendant who is under investigation would unduly frustrate the purpose of this provision.  Cf. X Corp. v. John Doe, 805 F. Supp. 1298, n.24 (E.D. Va. 1992) (noting that a Confidentiality Agreement would be void as against public policy if, when enforced, it would prevent "disclosure of evidence of a fraud on the government").  Therefore, Defendant's counterclaim eight (breach of contract - failure to return company property), must be **dismissed** as contrary to public policy.

Counterclaim nine (breach of contract - failure to refrain from disparagement), however, is based upon disparaging statements that Head allegedly made to third parties not involved in this litigation, and not statements made in this proceeding or during the Government's investigation.  Def.'s Opp'n 13-14.  Enforcing the Agreement under counterclaim nine would not implicate Head's

---

[5] The United States also argues that Defendant's counterclaims are contrary to "the spirit" of 31 U.S.C. § 3730(h), which prohibits retaliation in the form of discharge, demotion, suspension, threats, harassment, or other discrimination "in the terms and conditions of employment."  31 U.S.C. § 3730(h) (2008).  Because Head was terminated prior to the filing of this Complaint, § 3730(h) does not apply to this action.

ability to bring this suit, and so does not involve the same public policy concerns as counterclaim eight.  Therefore, the Motion to Dismiss counterclaim nine as void as against public policy must be **denied**.  However, there is a remaining question, discussed below, as to whether Defendant properly alleged the elements of this claim in its pleading.

> **2.    Counterclaim Eleven Is Dismissed as Void Against Public Policy; Counterclaims Nine, Twelve, Five, Six, Seven, and Ten Are Not Dismissed as Void Against Public Policy**

The United States and Relator Head rely on <u>Harbert</u>, the major and most recent case in this Court, to argue that the remaining counterclaims should be dismissed as contrary to public policy. The court in <u>Harbert</u> drew a careful distinction between those counterclaims that were and that were not permitted in FCA suits. Guided principally by the unavailability of contribution and indemnification for a defendant under the FCA, and drawing upon judicial precedent, the District Court summarized the law as follows:  "[A]n FCA defendant found liable of FCA violations may not pursue a counterclaim that will have the equivalent effect of contribution or indemnification." <u>Harbert</u>, 505 F. Supp. 2d at 26.[6]

---

[6]    The court in <u>Harbert</u> recognized that, while any potential liability for events connected to a FCA suit could chill a relator from bringing suit, a blanket rule prohibiting a defendant from bringing any counterclaim would raise "real due process concerns." <u>Id.</u> at 27.

However, counterclaims based on independent damages, or claims the success of which does not require a finding that the defendant is liable, may be maintained.  Id. at 26-27.  Such claims fall into two categories:  First, there are those counterclaims where "the conduct at issue is distinct from the conduct underlying the FCA case."   Second, there are those counterclaims where "the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found not liable in the FCA case."   Id. at 27 (emphasis in original).   In contrast, a counterclaim is impermissible if it depends upon a finding that the defendant is liable under the FCA, as it would then have the equivalent effect of a claim for contribution or indemnification.

### a.   Counterclaims Nine and Twelve Are Permissible Under Category One

Counterclaims nine (breach of the 2005 Separation Agreement's non-disparagement provision) and twelve (injunctive relief relating to the breach of contract) fall under the first category of permissible counterclaims.  Because liability turns on whether Head made disparaging or critical statements to third parties in violation of his contractual obligations after this suit was filed and completely apart from this proceeding, they do not implicate Defendant's liability under the FCA.

### b.   Counterclaims One, Five, Six, Seven, and Ten Are Permissible Under Category Two

The second category of permissible counterclaims (where the defendant must be found not liable) includes counterclaims one (defamation), five (malicious prosecution), six (libel), seven (slander), and ten (fraud). See id. at 28 (naming libel, defamation, malicious prosecution, and abuse of process as examples of permissible counterclaims under the FCA). The defamation, libel, and slander counterclaims depend upon a finding that Kane Company is not liable under the FCA, since truth is a defense under both Maryland and District of Columbia law. Moldea v. New York Times Co., 15 F.3d 1137, 1142 (D.C. Cir. 1994) (noting defense of truth to defamation claims under District of Columbia law); Batson v. Shiflett, 325 Md. 684, 726 (1992) (noting defense of truth to defamation claims under Maryland law). Similarly, counterclaim ten (fraud) requires a finding that, prior to signing the Separation Agreement, Head had "misrepresented Kane or dealt with any third party in bad faith" when he alleged Kane's violation of the FCA. Def.'s Opp'n 14. Finally, counterclaim five (malicious prosecution) requires a showing that the proceeding was resolved in favor of the party bringing the claim, which is the equivalent of a showing that the FCA defendants were found not liable. See Shulman v. Miskell, 626 F.2d 173, 175 (D.C. Cir. 1980).

### c. Counterclaims Two, Three, and Four Will Be Permissible Under Either Category One or Two

Counterclaims two (tortious interference with economic advantage), three (intentional interference with contract), and

four (intentional interference with prospective business advantage)
would be permissible under category one if none of the elements of
these causes of action implicate Defendant's liability under the
FCA.  That question turns on an analysis of Maryland and District
of Columbia law.  Because the parties have not fully briefed that
issue, it is premature for decision.  Therefore, it cannot be said
with certainty that counterclaims two, three, and four fall under
category one.

However, even if it were determined that counterclaims two,
three, and four implicate Defendant's liability under the FCA, the
counterclaims would still be permissible because they fall under
category two.  The only elements in these causes of action that
possibly require a finding as to Defendant's liability under the
FCA are those that require the interference to be with a "lawful"
business, and that the interference be done without right or
justification.[7]  Thus, the required finding, if any, would be that
Kane Company was <u>not</u> liable under the FCA.  Under either analysis,

_____

[7] For the elements of each cause of action, see <u>Spengler v.
Sears, Roebuck & Co.</u>, 878 A.2d 628, 641 (Md. App. 2005) (tortious
interference with economic relations claim under Maryland law);
<u>Paul v. Howard Univ.</u>, 754 A.2d 297, 309 (D.C. 2000) (tortious
interference with contract claim under District of Columbia law);
<u>Blondell v. Littlepage</u>, 968 A.2d 678, 696 (Md. App. 2009) (tortious
interference with contract claim under Maryland law); <u>Bennett
Enters., Inc. v. Domino's Pizza, Inc.</u>, 45 F.3d 493, 499 (D.C. Cir.
1995) (tortious interference with economic advantage claim under
District of Columbia law); <u>Carter v. Aramark Sports and
Entertainment Services, Inc.</u>, 835 A.2d 262, 279-80 (Md. App. 2003)
(intentional interference with business relations claim under
Maryland law).

then, counterclaims two, three, and four would be permissible. Therefore, the Motion to Dismiss these counterclaims as contrary to public policy is **denied.**

### d. Counterclaim Eleven (Contractual Indemnification) Is Dismissed

In contrast, Defendant's counterclaim for contractual indemnification pursuant to ¶ 10 of the 2005 Separation Agreement clearly falls within the category of those counterclaims not permitted by the FCA. Defendant seeks to hold Head liable for any damages arising from the pending FCA claims. Def.'s Opp'n 16. Even if the FCA claims arose, as alleged, from Head's "willful misconduct" or from his having breached the Separation Agreement, liability for violations of the FCA may not be shifted to the relator. Harbert, 505 F. Supp. 2d at 26-28. In light of the clear prohibition against counterclaims for contribution or indemnification, Defendant's eleventh counterclaim is **dismissed** with prejudice.

### B. Counterclaims Which Are Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Head also seeks to dismiss the remaining ten counterclaims under Federal Rule of Civil Procedure 12(b)(6). These include counterclaims one (defamation), two (tortious interference with economic advantage), three (intentional interference with contract), four (intentional interference with prospective economic advantage), five (malicious prosecution), six (libel), seven

(slander), nine (breach of contract - failure to refrain from disparagement), ten (fraud), and twelve (injunctive relief).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint will not suffice, however, if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) (citing Twombly, 550 U.S. at 557).

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

### 1. Counterclaims Dependent Upon Relator Head's Statements

Eight of Defendant's remaining ten counterclaims are based upon the allegation that Head made false statements alleging Kane

Company's liability under the FCA, whether as a part of this proceeding or in subsequent statements to third parties other than the government.  These include counterclaims one (defamation), two (tortious interference with economic advantage), three (intentional interference with contract), four (intentional interference with prospective economic advantage), six (libel), seven (slander), nine (breach of contract - failure to refrain from disparagement), and ten (fraud).[8]

To the extent that Defendant relies upon any allegation made by Head in pleadings filed in this Court or in support of the government's investigation, its counterclaims are barred by absolute privilege. Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc., 774 A.2d 332, 338 (D.C. 2001) ("Along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relation to the proceeding"); Brown v. Collins, 402 F.2d 209, 212 (D.C. Cir. 1968); Restatement (First) of Torts § 587 (2009).

Defendant does not deny, however, that the absolute privilege doctrine applies to the statements made in this proceeding. Instead, Defendant asserts that its counterclaims are based on

---

[8] The counterclaim for fraud in the inducement alleges that Head misrepresented, at the time he entered into the Separation Agreement, whether he had "misrepresented Kane or dealt with any third party in bad faith."  Def.'s Opp'n 14.

statements made by Head at some unspecified point in time to unspecified third parties.  Def.'s Opp'n 3, 5, 6.  Yet Defendant has alleged no facts in support of its claim that Head made any such statements, and does not claim to have knowledge of any evidence of such statements having been made.  Id. at 6.  Such bare assertions do not nudge Defendant's claims across the line "from conceivable to plausible."

Further, the allegation fails to meet the standard for a defamation claim facing a motion to dismiss in <u>Armenian Assembly of America, Inc. v. Cafesjian</u>, 597 F. Supp. 2d 128, 137 (D.D.C. 2009), upon which Kane Company itself relies, that it include at least "enough information 'to apprise' [the party accused] of the persons or category of persons to whom the defamatory statements were made . . . ."  Given Defendant's failure to assert <u>any</u> facts in support of its allegation that Relator Head made statements to third parties, counterclaims one (defamation), two (tortious interference with economic advantage), three (intentional interference with contract), four (intentional interference with prospective economic advantage), six (libel), seven (slander), nine (breach of contract - failure to refrain from disparagement), and ten (fraud) must be dismissed for failing to state a claim under Rule 12(b)(6).

Defendant, however, requests leave to amend any such deficient counterclaims in lieu of dismissal.  Def.'s Opp'n n.3.  Under Federal Rule of Civil Procedure 15(a), leave to amend shall be

freely given when justice so requires. <u>Caribbean Broad. Sys., Ltd.</u> <u>v. Cable & Wireless P.L.C.</u>, 148 F.3d 1080, 1083-85 (D.C. Cir. 1998). In exercising its discretion, the trial court may consider, among other factors, undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment. <u>Hammerman v. Peacock</u>, 607 F. Supp. 911, 917 (D.D.C. 1985). As none of these factors appear to be present, and because the arguments made by the United States and Head in opposing the request for leave to amend are not persuasive, Defendant is **granted** leave to amend counterclaims one through four, six, seven, nine, and ten in order to cure any factual deficiencies in the pleadings, including, but not limited to, insufficient facts supporting the allegation that Head made disparaging or defamatory statements to third parties.

### 2. Counterclaim Five (Malicious Prosecution) Is Dismissed

Defendant also counterclaims for malicious prosecution. Under Maryland law, a claim for malicious prosecution only applies in criminal proceedings, and therefore is not properly brought in this action. <u>Southern Mgmt. Corp. v. Taha</u>, 378 Md. 461, 479 (2003). Under District of Columbia law, a malicious prosecution claim may be brought in both civil and criminal proceedings. <u>See</u> <u>Brown v.</u> <u>Carr</u>, 503 A.2d 1241 (D.C. 1986). One of the prima facie elements of the claim under D.C. law, however, is that the underlying suit must have been first terminated in favor of the claimant. <u>Shulman</u>

<u>v. Miskell</u>, 626 F.2d at 175 (explaining requirement on the theory that, "if the malicious prosecution plaintiff were permitted to sue before he had prevailed in the original action, inconsistent judgment might be entered on the same question between the same parties").  Given this, Defendant's claim is premature, as the current action brought under the FCA has yet to be decided.  The counterclaim for malicious prosecution is therefore **dismissed** without prejudice.

### 3.  Defendant's Counterclaim for Injunctive Relief Is Not Dismissed

The last remaining counterclaim is Defendant's request for an injunction prohibiting Head from further breaching the Separation Agreement.  Def.'s Answer ¶¶ 84-88.  In effect, this "counterclaim" is a request for a particular remedy—injunctive relief—based on Kane Company's two counterclaims for breach of the Separation Agreement.  The first counterclaim for breach of contract, related to Head's failure to return the January 3, 2000 email to Kane Company, has been dismissed as contrary to public policy.  The second counterclaim for breach of contract, related to Head's alleged statements to third parties, however, has not yet been dismissed, pending Defendant's amendment of its counterclaims.  Thus, the Motion to Dismiss Defendant's request for injunctive relief is **denied** without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the United States' Motion to Strike Affirmative Defense under Federal Rule of Civil Procedure 12(f) is **granted,** and the United States' and Relator Head's Motions to Dismiss Defendant's Counterclaims are **granted** as to counterclaims five (malicious prosecution), eight (breach of contract - failure to return company property), and eleven (contractual indemnification). Defendant is **granted** leave to amend counterclaims one (defamation), two (tortious interference with economic advantage), three (intentional interference with contract), four (intentional interference with prospective economic advantage), six (libel), seven (slander), nine (breach of contract - failure to refrain from disparagement), and ten (fraud). An Order will accompany this Memorandum Opinion.


November 12, 2009                    /s/_____
                                     Gladys Kessler
                                     United States District Judge


<u>Copies to</u>: attorneys on record via ECF