UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|    *ex rel.* ) | |
| ) | |
| ANTHONY HEAD ) | |
| ) | |
|      **Plaintiff,** ) | |
| ) | |
|    v. ) | Civil Action No. 05-317 (GK) |
| ) | |
| THE KANE COMPANY, et al., ) | |
| ) | |
|      **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

Relator Anthony Head brings this qui tam action, pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., against Defendants Kane Company ("the Company"), Settles Associates, Inc., the Perara Group, Inc., Management Alternatives, Inc., Harris Design Group, P.C., as well as Kane Company officers, John Kane, Ronald Meliker, James Durfee, William Auchter, and Buck Whitman.[1] Relator also brings breach of contract and state law tort claims against Defendants Kane Company, John Kane, and Ronald Meliker.

The U.S. Government has intervened in Relator's qui tam action and brings suit for violations of the FCA against Defendants Kane

---

[1] According to the docket, Defendants Settles Associates, Inc., the Perara Group, Inc., Management Alternatives, Inc., Harris Design Group, P.C., as well as Kane Company officers, James Durfee, William Auchter, and Buck Whitman have never been served by Relator. Consequently, the Court does not have jurisdiction to consider Relator's claims against these Defendants.

Company and its subsidiaries, including Office Movers, Inc., and Office Installers, Inc.

This matter is presently before the Court on Defendants' Motion to Dismiss, (Nov. 15, 2010) [Dkt. No. 115], Relator's Third Amended Complaint, ("3d. Am. Compl.") (Oct. 13, 2010) [Dkt. No. 113], and the United States' Complaint in Intervention ("U.S. Compl.") (Apr. 27, 2009) [Dkt. No. 47], pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[2] Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss is **granted** in part and **denied** in part.

## I. Background[3]

Relator Anthony Head began working for Defendant Kane Company on December 1, 1997. 3d. Am. Compl. ¶ 14. Defendant Kane Company is a Maryland corporation providing office moving and other services to corporate and government clients. Id. ¶ 16. Defendant John Kane

---

[2] Defendants' Motion to Dismiss the Third Amended Complaint has been jointly brought by Defendants Kane Company, John Kane, and Ronald Meliker. Unless otherwise noted, in this opinion the term "Defendants" shall refer to the Kane Company, John Kane, and Ronald Meliker.

[3] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Relator's Third Amended Complaint, the United States' Complaint in Intervention, and the undisputed facts in the record.

is President and CEO of Kane Company, and Defendant Ronald Meliker is Executive Vice President and COO of Kane Company. Id. ¶¶ 17, 19.

During his employment by the Company, Relator served in various positions, including Project Manager Coordinator and Vice President of various Kane Company subsidiaries. Id. In these capacities, Relator attended various Company meetings, including at the executive-level, and reviewed a number of Kane Company's government contracts. Id. ¶ 36.

Since at least 1980, Kane Company has entered into various agreements, governed by the Service Contract Act ("SCA"), 41 U.S.C. § 351 et seq., to provide moving and other services to various Government agencies. Id. ¶ 6. Beginning some time in 1998, Relator learned that Kane Company had regularly failed to pay SCA-required wage determinations on a number of these government contracts.[4] Id. ¶¶ 36-44. On various occasions, Relator spoke to Kane Company officers, including Defendants John Kane and Ronald Meliker, about these problems. Id. To Relator's knowledge, these officials took no action to correct these practices. Id.

At different times between 2002 and 2005, Relator also attended various executive-level meetings in which Kane Company

_____

[4] The SCA establishes minimum labor standards for service contracts between the Government and private contractors. 41 U.S.C. § 351(a). Among other things, the SCA requires contractors to: (1) pay "a minimum monetary wage" to employees who work on federal contracts; and (2) provide "fringe benefits" to covered employees. Id. § 351(a)(1) - (a)(2).

officials, including Defendants John Kane and Ronald Meliker, discussed the following illegal practices: (1) fraudulently billing the Government for employee services that were not provided and double billing for employee work;(2) overcharging the Government for fuel costs; and (3) refraining from providing the "best price," i.e. the price paid by the Company's comparable commercial customers, as required by 48 C.F.R. § 552.215-72, when "negotiating to enter" the Government's General Services Administration ("GSA") Schedule or when submitting bids for GSA Schedule Contracts. Id. ¶¶ 45-52.

In 2004, Relator met with Mary Perara, CEO of the Perara Group, a member of the Small Business Administration's ("SBA") Section 8(a) program for certified minority-owned businesses. Id. ¶ 53. At this meeting, the parties discussed a possible partnership between Defendant Kane Company and the Perara Group on government contracts reserved for Section 8(a) companies. Id. Following this meeting, Relator did not recommend proceeding with the partnership, since the Perara Group had no experience with the type of services Defendant Kane Company provided. Id. After leaving Kane Company, Defendant learned that the Perara Group had obtained several Section 8(a) contracts with the Government. Id. ¶ 54. Relator believed that Defendant Kane Company entered into an illegal agreement with the Perara Group to perform most of the work on

these contracts in exchange for a portion of the Section 8(a) contract funds. Id. ¶¶ 54-55.

On January 10, 2005, Defendant Kane Company terminated Relator for poor performance. Id. ¶ 14; Defendants' Motion to Dismiss Relator's Second Amended Complaint and United States' Complaint in Intervention, 4 ("Defs.' Mot.") (Mar. 8, 2010) [Dkt. No. 82]. Approximately two weeks later, Relator and Defendant Kane Company entered into a Separation Agreement in connection with Relator's termination. Defendant Kane Company's Answer and Counterclaims, Ex. A. ¶ 4 (July 24, 2009) [Dkt. No. 56-1].

On February 11, 2005, Relator filed a sealed Complaint in this Court, which he subsequently amended on March 1, 2007 [Dkt. No. 15]. In these Complaints, Relator alleges that Defendants Kane Company, John Kane, and Ronald Meliker violated the FCA by engaging in the aforementioned fraudulent schemes.

On March 26, 2009, following a four year investigation into Relator's allegations, the United States intervened in this case [Dkt. No. 45]. On April 27, 2009, the Government filed its Complaint in Intervention. On July 24, 2009, Defendant Kane Company filed an Answer and Counterclaims to the U.S. Complaint and Relator's First Amended Complaint [Dkt. No. 56], raising two

affirmative defenses against the Government's allegations and twelve state law counterclaims against Relator.[5]

On February 16, 2010, Relator filed a Second Amended Complaint [Dkt. No. 77], raising claims of unlawful retaliation under the FCA, breaches of the Separation Agreement, and common law tort claims against Defendants. On March 8, 2010, Defendants filed a Motion to Dismiss Relator's Second Amended Complaint and United States' Complaint in Intervention. On April 19, 2010, the United States filed an Opposition to Defendants' Motion to Dismiss ("U.S. Opp'n") [Dkt. No. 92]. On May 4, 2010, Relator filed an Opposition to Defendants' Motion to Dismiss (Rel. Opp'n) [Dkt. No. 94]. On May 7, 2010, Defendants filed a Reply in Support of Their Motion to Dismiss (Defs.' Reply) [Dkt. No. 95]. On May 27, 2010, Relator filed a Notification of Supplemental Authority and Surreply to Defendants' Reply in Support of Their Motion to Dismiss ("Surreply") [Dkt. No. 98].

On October 13, 2010, Relator Head filed a Third Amended Complaint, adding several new factual allegations and raising a claim for injunctive relief to prevent Defendants from further violating the Separation Agreement. On November 15, 2010, Defendants filed a Motion to Dismiss Relator's Third Amended

_____

[5] Defendants John Kane and Ronald Meliker did not join in Defendant Kane Company's counterclaims against Relator. On November 12, 2009, this Court dismissed nine of Defendants' counterclaims and one of their affirmative defenses [Dkt. No. 65].

Complaint, responding to the new allegations raised in the Third Amended Complaint and incorporating the arguments from their Motion to Dismiss the Second Amended Complaint.[6] On November 23, 2010, Relator filed a Memorandum in Opposition ("Rel. Supp. Opp'n") [Dkt. No. 116]. On December 3, 2010, Defendants filed a Reply in Support of Their Motion to Dismiss Relator's Third Amended Complaint ("Defs.' Supp. Reply")[Dkt. No. 117].[7]

---

[6] On October 13, 2010 the Court dismissed Relator's Second Amended Complaint and granted his motion to file a Third Amended Complaint. See Order Granting Relator's Motion for Leave to File Third Amended Complaint ("Oct. 13, 2010 Order") [Dkt. No. 112]. This Court also issued an Order dismissing Defendants' Motion to Dismiss the Second Amended Complaint as moot (Dec. 9, 2010)[Dkt. No. 118]. However, the Court permitted Defendants to include all arguments from their Motion to Dismiss the Second Amended Complaint in their Motion to Dismiss the Third Amended Complaint. Oct. 13, 2010 Order. The Court further indicated that any supplemental briefing should only address Relator's new allegations. Id. Accordingly, in deciding Defendants' Motion to Dismiss the Third Amended Complaint, the Court will consider the parties' arguments relating to both the Second Amended and Third Amended Complaints.

[7] On January 3, 2011, Defendants filed a Notice of Supplemental Authority Related to Motions to Dismiss [Dkt. No. 119]. In addition to apprising the Court of a recent D.C. Circuit case, this Notice also contained extensive new arguments relating to the underlying Motion. On January 13, 2011, the Government filed a Response to Defendants' "Notice of Supplemental Authority" [Dkt. No. 121]. On January 14, 2011, Relator filed a Response to Defendants' Notice of Supplemental Authority Related to Motions to Dismiss [Dkt. No. 122]. On January 21, 2011, Defendants filed a Reply Regarding Notice of Supplemental Authority [Dkt. No. 123].

The Supplemental Authority on which Defendants relied is United States v. Science Applications Int'l Corp., 626 F.3d 1257, 1266 (D.C. Cir. 2010)[hereinafter "SAIC"]. Defendants have misrepresented the holding and rationale of their supplemental case, and the Court finds their arguments to be unpersuasive.

## II. Standard of Review

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940 (citing Twombly, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the court may consider any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record. E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are

true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." <u>Aktieselskabet</u>, 525 F.3d at 17 (citations and internal quotations omitted). <u>See also</u> <u>Tooley v. Napolitano</u>, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that <u>Iqbal</u> invalidated <u>Aktieselskabet</u>).

### B. Rule 9(b)

Rule 9(b) requires that a "party [] state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Claims brought under the FCA state an action in fraud, and therefore are subject to Rule 9(b)'s pleading requirements. <u>U.S. ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Courts must not rigidly apply the requirements of Rule 9(b), but rather should analyze the Rule on a case by case basis. <u>U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am. Inc.</u>, 238 F. Supp. 2d 258, 269-70 (D.D.C. 2002). Thus, while some courts have required greater specificity in the allegations of fraud, such heightened pleading requirements may not be appropriate in each and every case. <u>Id.</u> at 270.

In deciding Rule 9(b) cases, courts should also be guided by the Rule's purpose to "discourage the initiation of suits brought solely for their nuisance value, and [to] safeguard potential

defendants from frivolous accusations of moral turpitude . . . . And because fraud encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response." Martin-Baker, 389 F.3d at 1256 (citations and internal quotations omitted) (alteration in original). A court should "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp., 251 F. Supp. 2d 28, 34 (D.D.C. 2003).

## III. Analysis

Plaintiffs allege that various Defendants violated the FCA by conspiring to and in fact defrauding the U.S. Government. 3d. Am. Compl., Counts 1-3; U.S. Compl., Count 1.

In his Third Amended Complaint, Relator also brings the following additional claims. First, Relator claims that Defendant Kane Company violated Section 3730(h) of the FCA by retaliating against him for his protected activities.[8] 3d. Am. Compl., Count 4.

---

[8] In the Third Amended Complaint, Relator also raises an FCA retaliation claim against Defendants John Kane and Robert Meliker. 3d. Am. Compl. ¶ 130. However, in his Motion papers, Relator abandons this claim. Rel. Opp'n 40 n. 21. The Court, therefore, will only consider Relator's retaliation claim against Defendant Kane Company.

Second, Relator raises claims against Defendant Kane Company for breach of the Separation Agreement, and also brings various tort law claims against Defendants Kane Company, John Kane, and Ronald Meliker. Id. Counts 5-12.[9] Finally, Relator requests a temporary restraining order, as well as preliminary and permanent injunctive relief, enjoining Defendant Kane Company and its officers from further breaching the Separation Agreement. Id. Count 13.

Defendants have moved to dismiss all the foregoing claims. In his Opposition to Defendants' Motion to Dismiss the Third Amended Complaint, Relator has withdrawn his claim for injunctive relief in Count 13. Rel. Supp. Opp'n 1 n.1. The Court, therefore, will dismiss that Count with prejudice. The Court will now consider Defendants' arguments against Plaintiffs' remaining claims.

## A. Plaintiffs' Fraud Claims Under the FCA

The FCA provides a civil penalty and treble damages against any individual who: (1) knowingly presents or causes to be presented a false or fraudulent claim for payment or approval by the United States, 31 U.S.C. § 3729(a)(1); (2) knowingly makes,

---

[9] In Counts 5-6, Relator raises two breach of contract claims against Defendant Kane Company, alleging multiple violations of the Separation Agreement. In Count 7, Relator raises defamation claims against Defendants Kane Company, John Kane, and Robert Meliker. Counts 8-11 raise claims for intrusion upon seclusion, appropriation of likeness/name, and invasion of privacy against Defendants Kane Company and John Kane. In Count 12, Relator brings an abuse of legal process claim against Defendant Kane Company, alleging that it filed twelve counterclaims against Relator for improper purposes.

uses, or causes to be made or used, a false record or statement material to getting a false or fraudulent claim paid or approved by the Government, id. § 3729(a)(2); or (3) conspires to defraud the United States by getting a false or fraudulent claim allowed or paid, id. § 3729 (a)(3).[10] To enforce these and other provisions of the FCA, a private person, known as a "relator," may bring a civil or "qui tam" action in the Government's name. 31 U.S.C. § 3730(b)(1). If the Government decides to intervene, it shall then have the primary responsibility for prosecuting the action, although the relator may continue as a party to the case, subject to certain limitations enumerated in the statute. Id. § 3730(c)(1).

Relying on the foregoing provisions, Relator alleges that Defendants Kane Company, John Kane, and Ronald Meliker violated Sections 3729(a)(1), (a)(2), and (a)(3) of the FCA by avoiding payment of SCA-required wages to employees working on the Company's government contracts. 3d. Am. Compl. ¶¶ 103-15, 116-119, 125-26. In

---

[10] In 2009, the FCA was amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617. Most of the FERA amendments went into effect on May 20, 2009 and apply only to conduct occurring on or after that date. However, FERA made certain amendments retroactive to June 7, 2008 and applicable to all "claims" pending on or after that date. Id. at Sec. 4(f). "Courts that have considered this clause have noted [that] 'claims' refers only to a defendant's request for payment, and not to pending cases." U.S. ex rel. Bender v. N. Am. Telecomm'ns, Inc., 750 F. Supp. 2d 1, 5 (D.D.C. 2010). As the parties in this case have not argued for application of the FERA amendments and because these amendments do not affect resolution of the instant Motion, the Court shall refer only to the pre-amendment version of the FCA for the remainder of this opinion.

its Complaint in Intervention, the Government joins in this allegation, but brings its claim only against Defendant Kane Company and its subsidiaries, including Office Movers and Office Installers, Inc. See generally, U.S. Compl.

Defendants urge the Court to dismiss Plaintiffs' FCA claims on four grounds. First, Defendants argue that Plaintiffs "have not pled the requisite objective false statement underlying their FCA [Section 3729(a)] claims."[11] Defs.' Reply 9. Second, Defendants argue that Plaintiffs have not "demonstrate[d] that SCA compliance was material to the Government's decision to pay" under the Kane Company's government contracts. Id. at 14. Third, Defendants argue that some of Relator's conspiracy claims under Section 3729(a)(3) must be dismissed pursuant to Rule 12(b)(6). Defs.' Mot. 11 n.4; Defs.' Reply 15 n.16. Fourth, Defendants argue that all claims brought by Plaintiffs under Section 3729(a) of the FCA must be dismissed for failure to meet Rule 9(b)'s pleading requirements. Defs.' Mot. 8-11.

---

[11] The Court notes that Defendants raise this argument, as well as a number of others, for the first time in their reply brief. See generally, Defs.' Reply. Although "we have generally held that issues not raised until the reply brief are waived," Gen. Elec. Co. v. Jackson, 610 F.3d 110, 123 (D.C. Cir. 2010)(citations and internal quotations), these issues are not deemed to have been waived since Relator was afforded the opportunity to respond to Defendants' arguments in his Surreply.

### 1. Plaintiffs Have Adequately Alleged "False Claims" Under the FCA

Although Defendants rely on Rule 9(b) to argue that Plaintiffs have failed to plead the "objective false statement[s]" underlying their fraud claims, Defs.' Reply 9-17, they are in actuality raising a Rule 12(b)(6) challenge. <u>U.S. ex rel. Folliard v. CDW Tech. Servs.</u>, 722 F. Supp. 2d 20, 27-28 (D.D.C. 2010)(citation and internal quotations omitted). Defendants argue that both Relator and the Government fail to allege that "any" false claims were made to the Government. It is axiomatic that a plaintiff bringing an action for fraud under the FCA must, first and foremost, allege that an actual "false claim" was presented to the Government. <u>See U.S. ex rel. Totten v. Bombardier Corp.</u>, 286 F.3d 542, 551 (D.C. Cir. 2002) (holding that the FCA "attaches liability [] not to underlying fraudulent activity, but to the claim for payment") (citation and internal quotations omitted).

The FCA defines "claims" to include "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). Congress has emphasized that the FCA should be broadly interpreted "to reach all types of fraud . . . that might result in financial loss to the Government." <u>United States v. Neifert-White Co.</u>, 390 U.S. 228, 232, 8 S. Ct. 959 (1968). Accordingly, "'[f]alse claims' under the FCA

take a variety of forms." SAIC, 626 F.3d at 1266. These include:
(1) presentment claims; (2) fraudulent inducement claims; and (3)
false certification (express or implied) claims. See U.S. ex rel.
Bettis v. Odebrecht Contractors of Cal., Inc., 393 F.3d 1321, 1326
(D.C. Cir. 2005)(recognizing that claims based upon fraudulent
inducement are actionable under the FCA); SAIC, 626 F.3d 1257, 1266
(endorsing implied false certification theory as basis for FCA
claims in D.C. Circuit).

The elements of a presentment claim are that "(1) the
defendant submitted a claim to the government, (2) the claim was
false, and (3) the defendant knew the claim was false." Folliard,
722 F. Supp. 2d at 26. Fraudulent inducement claims consist of
"claim[s] submitted to the Government under a contract which was
procured by fraud, even in the absence of evidence that the claims
were fraudulent in themselves." Bettis, 393 F.3d at 1326. False
certification claims "rest[] on a false representation of
compliance with an applicable federal statute, federal regulation,
or contractual term." SAIC, 626 F.3d at 1266.

While presentment claims consist of explicitly false or
fraudulent demands for payment, id., fraudulent inducement and
false certification claims do not depend on the existence of such
explicitly false payment requests. Instead, those two types of
claims require the making of initial false representations to the
Government. See Bettis, 393 F.3d at 1328 (fraudulent inducement);

SAIC, 626 F.3d at 1266-67 (implied false certification). An initial false representation occurs when a party makes promises at the time of contracting that it intends to break. Bettis, 393 F.3d at 1329.

Relying on these forms of fraud, Plaintiffs allege that Defendants submitted "false claims" to the Government. Defendants contend, however, that Plaintiffs' allegations fail to qualify as "false claims" because: (1) they have not alleged any explicitly false or fraudulent demands for payment on which to base a presentment claim; and (2) they have not alleged any "[initial false representation] or certification on which to base a fraud-in-the-inducement or implied certification [claim]." Defs.' Reply 9-11, 12-16.[12] Defendants' arguments fail for the following reasons.

### a. Plaintiffs' Presentment Claims Adequately Allege Explicitly False or Fraudulent Demands for Payment

Defendants argue that Plaintiffs' presentment claims do not "identify" any explicitly false or fraudulent demands for payment made by Defendants to the Government. Defs.' Reply 9-11, 15-16. This argument misstates the standard Plaintiffs must meet in a Rule 12(b)(6) motion. Although a plaintiff must, of course, provide

---

[12] Defendants also argue that Plaintiffs' allegations merely claim breaches of contractual, statutory, or regulatory violations, which are not actionable under the FCA. Defs.' Reply 11-12. While it is true that the FCA does not attach liability to these types of breaches, U.S. ex rel. Hockett v. Columbia/HCA Healthcare, 498 F. Supp. 2d 25, 70 (D.D.C. 2007), Plaintiffs' allegations qualify as cognizable claims under the FCA, for different reasons, as demonstrated infra.

evidence of these false statements at some point, she is not required to do so at the early stages of litigation. See Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000) (holding that "using Rule 12(b)(6) . . . to weed out what appear to be factually-deficient cases may be incompatible with Rule 8"). Rather, to survive a 12(b)(6) motion, plaintiff need only "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 685 F. Supp. 2d 129, 133 (D.D.C. 2010) (citation and internal quotations omitted). In short, the complaints "need not plead law or match facts to every element of a legal theory." Krieger, 211 F.3d at 136 (citation and internal quotations omitted).

Plaintiffs' presentment claims adequately allege the existence of explicitly false or fraudulent demands for payment. First, the Government clearly alleges that Defendant Kane Company submitted explicitly false invoices to the Government under SCA contracts. See U.S. Compl. ¶ 15. Second, Relator also alleges that explicitly false demands for payment were made under several Kane Company contracts governed by the SCA. See, e.g., 3d. Am. Compl. ¶¶ 39-40. Finally, Relator's claims regarding the fraudulent billing of employee work and fuel surcharges are based, at least in part,

on allegations that explicitly false bills were submitted to the Government.[13] See id. ¶¶ 46, 62, 65.

### b. Plaintiffs' Fraudulent Inducement and False Certification Claims Adequately Allege Initial False Representations

### i. Fraudulent Inducement

Relator argues that, because Defendants originally obtained various government contracts through fraud, the theory of fraudulent inducement supports treating all subsequent demands for payment pursuant to those contracts as "false claims." Rel. Opp'n 13-15. Specifically, Relator's allegations raise the reasonable inference that Defendants implicitly made or caused to be made, in the course of executing their government contracts, the following false or fraudulent representations to the Government.

First, with regard to the SCA claims, Relator alleges that Defendant Kane Company entered into numerous Government contracts, intending to flout the contracts' SCA wage requirements. See generally, U.S. Compl. See also 3d. Am. Compl. ¶¶ 35-44, 56-61. This allegation raises the reasonable inference that, in executing

---

[13] Defendants argue that Relator's claims for fraudulent billing of employee work and fuel surcharges are not FCA claims, "but [rather are] unjust enrichment claim[s] that [do] not hinge on whether a false claim was presented to the United States." Defs.' Reply 14. However, Relator's allegation that the Government was billed for employee work that was not performed and overcharged for fuel costs are, in fact, paradigmatic FCA claims. See SAIC, 626 F.3d at 1266 ("In the paradigmatic [FCA] case, a claim is false because it involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.")(citation and internal quotations omitted).

these contracts, Defendant Kane Company, by and through its officers, implicitly and falsely represented to the Government that it would comply with the SCA.[14]

Second, with regard to Defendant Kane Company's fraudulent billing of employee work which was not performed, Relator alleges that he participated in various executive-level meetings with Kane Company officials in which "it was periodically discussed that

---

[14] In challenging Plaintiffs' SCA allegations, Defendants primarily rely on U.S. ex rel. UNITE HERE v. Cintas Corp., 06-cv-2413, 2008 WL 1767039 (N.D. Cal. Apr. 16, 2008). In that case, relator relied on theories of fraudulent inducement and implied false certification to allege that defendant violated the FCA by "obtaining numerous contracts with the U.S. government under the pretense that [defendant] would comply with the requirements of the [SCA] and by falsely certifying that it had so complied." Id. at *1. The District Court for the Northern District of California ultimately dismissed these claims under Rules 12(b)(6) and 9(b).

Defendants argue that UNITE HERE is "very similar" to the instant case. Defs.' Reply 13. However, the factual circumstances in UNITE HERE are, in fact, very different from those presented in this case. First, and most significantly, unlike Plaintiffs in this case, relator in UNITE HERE failed to raise any allegation that defendant initially obtained its government contracts "through false statements or fraudulent conduct." 2008 WL 1767039, at *9. Second, relator in UNITE HERE lacked direct knowledge of defendant's alleged violations of the FCA and, consequently, brought nearly all its claims based upon "information and belief." Id. at *3-4. By contrast, in this case, Plaintiffs' allegations are largely based on Relator's personal knowledge of the SCA scheme. See, e.g., 3d. Am. Compl. ¶ 56. Finally, while the Government has intervened in the instant case, it declined to do so in UNITE HERE. 2008 WL 1767039, at *1. Although the Government's failure to intervene in a case is not dispositive, it deserves respect because the Government makes such a decision "if, after assessing the evidence presented by relator and conducting its own preliminary investigation, it believes the action lacks merit." U.S. ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 26 (D.D.C. 2002).

there was misconduct concerning the billing and use of employees at staff positions on two or more contracts for the same hours" and "that there was a practice of employees at staff positions . . . for Defendant Kane Company and its affiliates signing in on government time sheets and then leaving the workplace to work on a private sector project or other government job." Id. This allegation raises the reasonable inference that, in executing government contracts, Defendant Kane Company, by and through its officers, implicitly and fraudulently represented to the Government that it would accurately bill for its services.

Third, with regard to Defendant Kane Company's fraudulent billing of fuel costs, Relator alleges that during executive-level meetings in 2002-2003 he was told that "Defendant Kane Company would be starting a new practice of adding an 'energy surcharge' for fuel. . . . However, Defendant Kane Company already incorporated the fuel charge into its existing pricing and bills submitted to the government." Id. ¶ 47. This allegation raises the reasonable inference that, in executing government contracts, Defendant Kane Company, by and through its officers, implicitly and fraudulently represented to the Government that it would accurately bill for its fuel costs.

Fourth, with regard to Defendant Kane Company's failure to provide the GSA best price, Relator alleges that during executive-level meetings in 2003 and 2004, several officers and employees of

Defendant Kane Company suggested that they "wanted to bill the government under the GSA Schedule at higher rates than those comparable commercial customers" and that they would "intentionally withhold from the government these comparable commercial customers who were provided [with] lower rates. . . . [so that] Kane company could then negotiate to enter the GSA schedule at higher labor rates than those provided to their best commercial customers." <u>Id.</u> ¶ 49. These allegations raise the reasonable inference that, in executing GSA contracts, Defendant Kane Company, by and through its officers, implicitly and fraudulently represented to the Government that it had provided accurate information for the GSA schedule.

Finally, with regard to Defendant Kane Company's relationship with the Perara Group, Relator alleges that: (1) the Kane Company "used the Perara Group as a Section 8(a) 'pass through' such that Office Movers, a Kane Company affiliate, can obtain money on government contracts that are intended for SBA certified 8(a) contractors," <u>id.</u> ¶ 66; and (2) Defendant Kane Company, its officers, and the Perara Group, Inc., knowingly made or caused to be made "false statements to the SBA in which they certified or caused others to certify that Defendant Perara Group [] was acting in compliance with all pertinent laws and regulations, when in fact [the Perara Group] was performing services for numerous government agencies that it was not eligible to bid upon . . . ." <u>Id.</u> ¶ 121. These allegations clearly and explicitly state that, in connection

with the Perara Group's Section 8(a) government contracts, Defendants implicitly made or caused to be made fraudulent representations to the Government that the Perara Group would be providing its services under those agreements.

## ii. False Certification

The Government argues that "the subsequent invoices claiming payment for satisfactory compliance with the [SCA] contract terms create[d] implied false certification[s]" and thereby constitute "false claims."[15] U.S. Opp'n 12-13. Like Relator, the Government alleges that Defendant Kane Company entered into numerous government contracts intending to ignore the SCA wage requirements. See generally, U.S. Compl. These allegations raise the reasonable inference that, in executing these contracts, Defendant Kane Company, by and through its officers, implicitly and falsely represented that it would comply with the SCA. The Government also clearly alleges that Defendant Kane Company made express false certifications of compliance with the SCA. Id. ¶¶ 13, 18

For the foregoing reasons, Relator and the Government have adequately alleged the existence of "false claims." The Court,

_____

[15] Like Relator, the Government claims that Defendant Kane Company originally obtained the SCA contracts through fraudulent inducement. U.S. Opp'n 12-13. However, the Government also clearly relies on the theory of implied false certification to argue that subsequent demands for payment under those contracts constitute "false claims." Id.

therefore, **denies** Defendants' Motion to Dismiss Plaintiffs' FCA fraud claims on these grounds.

### 2. Plaintiffs Have Adequately Alleged that the SCA Is Material

Defendants also urge dismissal of Plaintiffs' SCA-based claims on the grounds that "[plaintiffs] allege nothing to demonstrate that [] SCA compliance was material to the Government's decision to pay under the contract."[16] Defs.' Reply 14-16. While Defendants present this challenge under Rule 9(b), their argument, again, amounts to a Rule 12(b)(6) claim.

To state a claim under the FCA, a complaint must allege that the false or fraudulent statements were material. Bender v. N. Am. Telecomm'ns, Inc., 686 F. Supp. 2d 46, 49 (D.D.C. 2010)[hereinafter "Bender II"]. Generally, a false claim is material if "it has a natural tendency to influence agency action or is capable of influencing agency action." U.S. ex rel. Fago v. M & T Mortg. Corp., 518 F. Supp. 2d 108, 118 (D.D.C. 2007) (citing United States v. TDC Mgmt. Corp., 24 F.3d 292, 298 (D.C. Cir. 1994)). See also U.S. ex rel. Ervin and Assocs., Inc., v. Hamilton Sec. Group, Inc., 370 F. Supp. 2d 18, 45 (D.D.C. 2005) (holding that false claim is material if "compliance with the presented claims must have been so important to the contract that the government would not have

---

[16] Defendants have not brought a materiality challenge to any of Relator's remaining fraud claims under the FCA.

honored the submission for payment on the claim if it were aware of the violation").

Defendants argue that Plaintiffs have failed to cite contractual language establishing that "SCA compliance is a mandatory condition for the Government to pay under any contract."[17] Defs.' Reply 14, and have therefore "allege[d] nothing to demonstrate that [] SCA compliance was material . . . ." Id. Essentially, Defendants argue that, in order to establish materiality, Relator and the Government must point to express contractual language establishing that compliance with the SCA was a mandatory condition of payment. This argument fails for two reasons.

---

[17] Defendants do acknowledge that the Government's Complaint includes express language regarding SCA compliance contained in a 2003 Kane Company GSA contract. See Defs.' Reply 14. This contract states that "[t]hese Labor Categories hourly rates are subject to State of Alaska WD942107. These hourly rates shall be adjusted at the Agency Task Order Level to comply with [Wage Determination] Rates Specific to the designated geographic area, where applicable." U.S. Compl. ¶ 13. Defendants argue that because this language does not expressly condition payment on compliance with the SCA, it fails to establish the statute's materiality. Defs.' Reply 14. However, contrary to Defendants' claims, as discussed infra, materiality does not depend upon the existence of express contractual language.

Defendants also contend that the Government cannot rely on this contractual language "for five out of the eight years at issue in this case (1998-2003), because the statement had not even been made yet." Id. However, the Government clearly presented this contractual clause as simply one example of the type of language included in Defendant Kane Company's GSA contracts. See U.S. Compl. ¶¶ 12-13.

First, Plaintiffs are not required under Rule 12(b)(6) to provide such detailed factual evidence. As previously discussed, all they must do at this early stage is plead the essential elements of their claim. In this regard, the Government clearly alleges that the SCA was material to its decision to pay. U.S. Compl. ¶ 16. Relator also made allegations from which it can be reasonably inferred that the SCA was material to the Government's payment decisions. <u>See</u> 3d. Am. Compl. ¶¶ 107, 114 ("The United States reasonably relied upon Defendants['] misrepresentations of compliance and/or accuracy in paying all sums due and owing under the [SCA] contracts . . . .").[18]

Second, Defendants are incorrect that, under the FCA, compliance with a statutory, regulatory, or contractual requirement is material only if there is express contractual language linking compliance to payment. In <u>SAIC</u>, our Court of Appeals directly addressed this issue and concluded that materiality does not turn on the presence of such express contractual language. In that case,

---

[18] Both the Relator and the Government also cite to statutory provisions that raise the reasonable inference that SCA compliance was material to Defendant Kane Company's government contracts. For example, they both cite to SCA Section 351, which states that the statute applies to Government contracts in excess of $2,500 "the principal purpose of which is to furnish services in the United States through the use of service employees," 41 U.S.C. § 351. <u>See</u> U.S. Compl. ¶ 9; 3d. Am. Compl. ¶ 27. The Government also cites to 48 C.F.R. 52.222-41, which was "incorporated into GSA multiple award schedule contracts" obtained by Defendant Kane Company and which subjects such contracts to the SCA's requirements. U.S. Compl. ¶ 14.

which involved an FCA claim based upon the theory of implied false certification, the court held that:

> The existence of express contractual language specifically linking compliance to eligibility for payment may well constitute dispositive evidence of materiality, but it is not . . . a necessary condition. The plaintiff may establish materiality in other ways, such as through testimony demonstrating that both parties to the contract understood that payment was conditional on compliance with the requirement at issue.

SAIC, 626 F.3d at 1269. Accordingly, whether at the motion to dismiss or merits stage of this litigation, Plaintiffs are not required to point to express contractual language to establish that SCA compliance was material to the Government's decision to pay in this case, and they "may establish materiality in other ways."[19] Id.

For the foregoing reasons, Plaintiffs have adequately alleged that compliance with the SCA was material to the Government's

---

[19] Although the argument is not explicitly made, Defendants suggest that violations of the SCA cannot generally form the basis of a FCA claim because the statute does not require contractors to submit a "certificate of compliance" in order to receive payment under SCA contracts. Defs.' Reply 13-15 & nn.13-14. However, in rejecting this argument, the court in SAIC noted that "'implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting a claim.'" 626 F.3d at 1270 (citing Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)). Accordingly, the SCA's lack of a certification requirement does not, in and of itself, prevent violations of the statute from being the basis of an FCA claim.

decisions to pay under the SCA-regulated contracts. Accordingly, the Court **denies** Defendants' Motion to Dismiss Plaintiffs' SCA fraud claim for failure to allege materiality.

### 3. Relator's FCA Conspiracy Claims Must Be Dismissed in Part for Failure to State a Claim

Pursuant to Rule 12(b)(6), Defendants move to dismiss two of Relator's FCA conspiracy claims. First, Defendants urge dismissal of the broad claim that Defendant Kane Company variously conspired with Defendants John Kane and Ronald Meliker to violate the FCA. Defs.' Mot. 11 n.4. Second, Defendants argue that the claim that Defendants conspired with the Perara Group to use the company as a "pass through" for Section 8(a) contracts should be dismissed with respect to Defendants John Kane and Ronald Meliker because the Perara Group has not been served or appeared in this case. Defs.' Reply 15 n.16.

Section 3729(a)(3) of the FCA attaches liability to anyone who "conspires to defraud the Government by getting a false or fraudulent claimed allowed or paid." Although the FCA does not define the term "conspiracy," the "courts have held that general civil conspiracy principles apply to FCA conspiracy claims." Westrick, 685 F. Supp. 2d at 140. In this case, two principles of civil conspiracy law are central to evaluating Defendants' challenge: (1) the intra-corporate conspiracy doctrine, Fago, 518 F. Supp. 2d at 117; and (2) the principle that a civil conspiracy claim need not be brought against all co-conspirators, Ass'n for

-27-

*Intercollegiate Athletics for Women v. Nat'l Collegiate Athletic*, 558 F. Supp. 487, 498 (D.D.C. 1983).

Under the intra-corporate conspiracy doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Fago*, 518 F. Supp. 2d at 117. Here, there is no dispute that Defendants John Kane and Ronald Meliker have been employees of the Kane Company at all times relevant to Relator's conspiracy claim. Accordingly, Defendant Kane Company could not have "conspired" with Defendants John Kane and Ronald Meliker to violate the FCA. Therefore, the Court must **grant** Defendants' Motion and dismiss this part of Relator's conspiracy claim under Count 3. *See* 3d. Am. Compl. Count 3 ¶¶ 117-20, 123.

Additionally, it is well-settled that "all co-conspirators need not be joined to permit any one or more to be held liable for an unlawful conspiracy." *Ass'n for Intercollegiate Athletics for Women*, 558 F. Supp. at 498. Accordingly, the Perara Group's absence from this case does not preclude a claim from being brought against Defendants John Kane and Ronald Meliker for allegedly conspiring with the Group to use it as a "pass through" for Section 8(a) contracts. While Defendant Kane Company also stands accused of participating in that conspiracy, the intra-corporate conspiracy doctrine does not apply "because there are alleged participants in the conspiracy who are not employees" of the Company. *Lerner v.*

<u>District of Columbia</u>, 362 F. Supp. 2d 149, 165 (D.D.C. 2005). The Court, therefore, **denies** Defendants' Motion to Dismiss Defendants John Kane and Ronald Meliker from this part of Relator's conspiracy claim under Count 3. <u>See</u> 3d. Am. Compl. Count 3 ¶¶ 121-22.

### 4. Plaintiffs' Fraud Allegations Satisfy Rule 9(b)

Defendants also argue that all of Plaintiffs' fraud allegations under Section 3729(a) of the FCA lack the necessary details to meet the particularity requirement of Rule 9(b). According to Defendants, these missing details include: (1) "the specific invoices, statements or records submitted to the Government that were supposedly false or fraudulent;" (2) "the particular government contracts to which these invoices, statements, or records pertain;" (3) "the allegedly false or fraudulent information within each such document;" (4) "which Defendant allegedly submitted such document;" (5) "where and when the alleged document submission occurred;" and (6) "the details of the Government's payment, if any, as a result of Defendants' allegedly false statements."[20] Defs.' Mot. 2. In response, Relator

---

[20] With respect to Relator's Complaint, Defendants further expand on the detailed allegations that should have been, but were not, provided: (1) "the dates of the contracts;" (2) "the services to be provided under the contracts;" (3) "the locality in which the contracts are to be performed;" (4) "the basis for Relator's assertion that the SCA's wage determination requirements applied to these contracts;" (5) "what wage, if any, Kane Company should have paid to each worker;" (6) "what wage, if any, Kane Company actually paid to each worker;" (7) "any information showing that Kane Company knew or should have known the wage determination to be paid

(continued...)

and the Government argue that: (1) Defendants' understanding of
Rule 9(b) requires Relator and the Government to "plead evidence
instead of allegations" and is divorced from this Circuit's case
law; and (2) the claims satisfy this Circuit's Rule 9(b) pleading
standard for cases involving fraudulent schemes. Rel. Opp'n 1, 18-
26; U.S. Opp'n 8-16.

As is well-established in this Circuit, "the simplicity and
flexibility contemplated by the rules must be taken into account"
in reviewing a complaint under Rule 9(b). <u>U.S. ex rel. McCready v.
Columbia/HCA Healthcare</u>, 251 F. Supp. 2d 114, 117 (D.D.C. 2003).
Most importantly, Rule 9(b)'s particularity requirement must be
harmonized with Federal Rule of Civil Procedure 8(a), which
requires that a complaint only contain a "short and plain
statement" of the claim. <u>See</u> <u>U.S. ex rel. Joseph v. Cannon</u>, 642
F.2d 1373, 1386 (D.C. Cir. 1981) (holding that "[t]he requirement
of particularity does not abrogate Rule 8, and it should be
harmonized with the general directives . . . of Rule
8 . . . .")(citations and internal quotations omitted); <u>Allen v.
Beta Constr.</u>, 309 F. Supp. 2d 42, 46 (D.D.C. 2004).

---

[20](...continued)
for each worker;" (8) "the identification of each document in which
the Kane Company certified that its performance under these
contracts complied with the SCA;" (9) "the invoices or other
statements Kane Company provided to the agency in order to procure
payment;" and (10) "the payment received." Defs.' Mot. 9-10.

As Plaintiffs rightly argue, Defendants' interpretation of Rule 9(b) eviscerates this standard and, instead, requires claimants to essentially provide detailed proof of their allegations.[21] It is, however, "inappropriate to require proof on a 9(b) motion to dismiss." <u>Pogue</u>, 238 F. Supp. 2d at 269. Rather, at this early stage of the litigation, an "[FCA] plaintiff need not allege with specificity every element of its cause of action if the complaint contains allegations from which an inference may be drawn that the plaintiff will produce evidence on the essential elements." <u>U.S. v. Intrados/Int'l Mgmt. Group</u>, 265 F. Supp. 2d 1,7 (D.D.C. 2002).

In contrast to Defendants' narrow reading of Rule 9(b), its language makes clear that "particularity [must be pled] only with respect to the circumstances <u>constituting fraud</u> . . . ." <u>Folliard</u>, 722 F. Supp. 2d at 27 (emphasis in original) (citation and internal quotations omitted). Furthermore, "[s]tating 'with particularity the circumstances constituting fraud' does not necessarily and always mean stating the <u>contents of [the claim]</u> . . . . It is the

---

[21] Defendants argue that the level of Rule 9(b) particularity that they seek has received support from "many cases." Defs.' Reply 5. However, Defendants cite to cases that are either from outside this Circuit, and therefore are not binding on this Court (e.g. <u>UNITE HERE</u>, 2008 WL 176703; <u>Sanderson v. HCA-The Healthcare Co.</u>, 447 F.3d 873 (6th Cir. 2006)), or that are from this jurisdiction and do not support the stringent pleading standard Defendants advocate (e.g. <u>Martin-Baker</u>, 389 F.3d 1251). In fact, Defendants rely on one case, <u>Allen</u>, 309 F. Supp. 2d at 46, in which our district court explicitly rejected an interpretation of Rule 9(b) that is substantially similar to what Defendants urge here.

scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentment of false [claims]." <u>U.S. ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 190 (5th Cir. 2009) (emphasis added).

Thus, where an FCA claim is based on a fraudulent "scheme," Rule 9(b) mandates only that the details of that scheme be stated with particularity. <u>See</u> <u>Folliard</u>, 722 F. Supp. 2d at 30 ("'[A] relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'"(quoting <u>Grubbs</u>, 565 F.3d at 190)).

In such cases, plaintiffs must "set out the details of the specific scheme and its falsehoods, as well as supply the time, place, and content of false representations, and link that scheme to claims for payment made to the United States." <u>McCready</u>, 251 F. Supp. 2d at 117 (citing <u>Totten</u>, 286 F.3d at 551-52). <u>See</u> <u>Martin-Baker</u>, 389 F.3d at 1256 (holding that Rule 9(b) "require[s] that the pleader . . . state the time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud . . . [and] to identify individuals allegedly involved in the fraud"). Where a "scheme spans several years," "Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud. . . ."

<u>Martin-Baker</u>, 398 F.3d at 1259.  In particular, plaintiffs are not required to "affix actual claims for payment to the complaint," <u>Pogue</u>, 238 F. Supp. 2d at 269, or to specifically name which employees of a corporate defendant submitted the false claims, <u>Westrick</u>, 685 F. Supp. 2d at 139. For fraudulent schemes that are particularly complex or extensive, Rule 9(b)'s pleading requirements may be further relaxed.[22] <u>Bender II</u>, 686 F. Supp. 2d at 52; <u>U.S. ex rel. Harris v. Bernard</u>, 275 F. Supp. 2d 7, 7-8 (D.D.C. 2003).

### a. Plaintiffs' SCA-Based Fraud Claims Satisfy Rule 9(b)

Plaintiffs' allegations regarding the SCA scheme plainly meet Rule 9(b)'s requirements.[23] Both Relator and the Government detail

---

[22] Although several of our district courts have applied a relaxed pleading standard in cases involving complex fraud schemes, our Court of Appeals has yet to rule on the issue. <u>See</u> <u>Martin-Baker</u>, 389 F.3d at 1258.

[23] Defendants argue against application of Rule 9(b)'s relaxed pleading standard, claiming that Plaintiffs' alleged fraud schemes are not complex. Defs.' Reply 7 n.9.  Defendants analogize this case to <u>Bender v. North American Telecommunications, Inc.</u> in which this Court concluded that Rule 9(b)'s pleading standard should not be relaxed because relator had only alleged "a fairly simple scheme to misrepresent completed work and falsify claims for payment." 686 F. Supp. at 52. By contrast, the instant case involves schemes to defraud the Government that allegedly involve innumerable contracts and demands for payment made over a number of years. Therefore, contrary to Defendants' argument, this case involves multiple, complex fraud schemes and justifies application of Rule 9(b)'s relaxed pleading standard. <u>See</u>, <u>e.g.</u>, <u>Harris</u>, 275 F. Supp. 2d 1 (applying Rule 9(b)'s relaxed pleading requirements to complex, multi-year scheme to fraudulently bill the Government for medical services).

the circumstances of the fraudulent scheme and the location, Kane Company executive-level meetings, the Company's government contracts, and invoices submitted to the Government under those contracts.[24] U.S. Compl. ¶¶ 12, 20-29; 3d. Am. Compl. ¶¶ 36-44, 56-60. With regard to time, the Government provides a specific time period - from 1998-2003 and 2003-2006 - for the scheme. U.S. Compl. ¶ 12. While Relator provides a more open-ended time-period for the fraudulent plan, alleging that it began in 1999[25] and continues to "the present time," even this lengthier time span is sufficient in a case involving a complex, fraud scheme. 3d. Am. Compl. ¶¶ 6, 36. See Harris, 275 F. Supp. 2d at 8 (allegations that complex fraud scheme "began in 1993 and continues into the present" satisfies Rule 9(b)); Pogue, 238 F. Supp. 2d at 268 (allegations that complex fraud scheme occurred over a twelve year period satisfies Rule 9(b)).

---

[24] Plaintiffs' Complaints also provide information on the geographic location where some of Defendant Kane Company's SCA contracts were performed. For example, Relator alleges that Defendant Kane Company failed to pay wage determinations on a "Department of Homeland Security contract in the District of Columbia" and a "[Department of] Health and Human Services/APHIS contract, including work performed in the District of Columbia." 3d. Am. Compl. ¶ 57. In its Complaint in Intervention, the Government specifically cites to a Kane Company contract with the U.S. House of Representatives. U.S. Compl. ¶ 15.

[25] Even though Relator's Complaint contains allegations about the SCA scheme that stretch back to 1998, he clearly states in briefing on the Motion to Dismiss, that "the time period at issue is from February 11, 1999 to the present. . . ." Rel. Opp'n 30 n.17.

Both Relator and the Government also specifically identify those Kane Company personnel involved in perpetrating the scheme,[26] and detail the content of the false and fraudulent representations, namely that the Company would comply with SCA requirements when, in fact, it had no intention of doing so. U.S. Compl. ¶¶ 12-29; 3d. Am. Compl. ¶¶ 36-44, 56-60.[27]

Both Relator and the Government also link Defendants' false statements to claims for payment made to the United States. U.S. Compl. ¶¶ 10, 15, 18; 3d. Am. Compl. ¶¶ 104-05, 111-12. In fact, on this issue, the Government provides far more detail than Rule 9(b) requires. This includes: (1) providing a sampling of government contracts[28] in which Defendant Kane Company failed to

---

[26] In addition to Defendants John Kane and Ronald Meliker, the other Kane Company officials allegedly involved in the scheme include William Auchter (Vice President for Facilities), Mark Cavanaugh (Chief Financial Officer), James Durfee (Vice President of Marketing), John Middlebrooks (Vice President of Government Sales), and Buck Whitman (Vice President of Sales). U.S. Compl. ¶¶ 20-28; 3d. Am. Compl. ¶¶ 36-44. Relator also alleges that these officials were variously involved in the other fraudulent schemes described in the Third Amended Complaint.

[27] In particular, the Government includes copies of two specific contracts under which Defendant Kane Company purportedly falsified its compliance with the SCA. U.S. Compl. ¶ 13, Ex A-1, A-2. Relator also includes information on specific Kane Company contracts that did not comply with the SCA's requirements. See, e.g., 3d. Am. Compl. ¶¶ 39-40, 60.

[28] Defendants argue that the Government's submission of sample contracts does not meet Rule 9(b)'s pleading requirements. Defs.' Reply 7-8. Citing Martin-Baker, Defendants claim that the D.C. Circuit has "suggested" that pleading by statistical sample is not permitted under Rule 9(b). Id. Martin-Baker does not, however,
(continued...)

-35-

comply with the SCA: (2) detailing the total amount paid by the Government to Kane Company under those contracts, the amount Defendant Kane Company underpaid employee wages and benefits under these contracts, and the resulting financial loss to the Government; and (3) invoices submitted by Defendant Kane Company to the Government under some of these contracts. U.S. Compl. ¶ 15, Ex. B-C. See also Folliard, 722 F. Supp. 2d at 27 (holding that "while Rule 9(b)'s particularity requirement applies to the [contention] that the request was fraudulent," Rule 12(b)(6)'s "general standards apply to the . . . existence of a request for payment").

### b. Relator's Remaining Fraud Claims Satisfy Rule 9(b)

Relator's remaining FCA claims have also been pled with sufficient particularity under Rule 9(b).

---

[28](...continued)
make any such suggestion. By contrast, as Relator has correctly pointed out, our district court has recognized that in FCA cases involving complex fraud schemes pleading by statistical sample is permitted under Rule 9(b). Harris, 275 F. Supp. 2d at 8.

In the alternative, Defendants argue that the Government's proffered contracts should not be treated as a statistical sample because "[t]he Government has not asserted that the contracts comprise a statistical sample of Defendants' government contracts, nor can it, given that all the contracts date from the last three years (2003-2006) of the 1998-2006 time frame during which the alleged fraudulent scheme occurred." Defs.' Reply 8 n.10. The Government, however, clearly describes these contracts as constituting a "sample." U.S. Compl. ¶ 15. Because this is an issue of fact, the Government's allegation must be accepted as true in a Rule 12(b)(6) motion to dismiss.

First, with regard to the scheme to fraudulently bill for employee work hours which were not performed, Relator's Complaint: (1) references two specific contracts for which Relator possesses personal knowledge of Kane Company's fraudulent billing; (2) indicates that the scheme was discussed during monthly Kane Company executive-level meetings that occurred while Defendant was "working for Defendant Kane [Company];" (3) names specific Kane Company officials involved in the scheme; and (4) connects this scheme to demands for payment made to the Government. 3d. Am. Compl. ¶¶ 45-46, 62.

Second, with regard to the scheme to fraudulently bill for fuel costs, Relator's Complaint: (1) indicates that the scheme was discussed during the aforementioned Kane Company executive-level meetings with the same Kane Company officials; (2) states that the scheme  occurred in 2002-2003 and 2005; (3) details the nature of the scheme; and (4) connects the fraudulent plan to demands for payment made to the Government. Id. ¶¶ 47-48, 65.

Third, with regard to the GSA best price scheme, Relator's Complaint: (1) details the nature of the scheme; (2) clearly indicates that it was discussed in 2003 and 2004 at Kane Company executive-level meetings and continues to the present time; (3) names the specific Kane Company officials involved in the scheme;

and (4) connects the scheme to demands for payment to the Government. Id. ¶¶ 9, 49-52,63-64, 104, 111-12.[29]

_____

[29] Relator has made some allegations, including those regarding the GSA best price and Perara Group schemes, on "information and belief." See, e.g., 3d. Am. Compl. ¶¶ 49, 54. Defendants argue that, because these pleadings on "information and belief" do not also allege "that the necessary information lies exclusively within [] defendant's control," the Third Amended Complaint fails to meet Rule 9(b)'s requirements. Defs.' Reply 8. Although it is true that Rule 9(b) permits pleadings on information and belief only where plaintiff also alleges lack of access to necessary information, Bender II, 686 F. Supp. 2d at 53, Defendants' argument fails for several reasons.

First, Defendants point to no authority establishing that plaintiff must allege that the absent information is within defendant's "exclusive" control. In Martin-Baker, our Court of Appeals held that, because plaintiffs bringing qui tam actions may "often have difficulty getting access to their former employers' documents," they may be excused from meeting Rule 9(b)'s particularity requirement by alleging lack of access to the information. 389 F.3d at 1258. However, the court at no point suggested that such information must be within defendant's "exclusive" control. See Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) ("[P]leadings on information and belief require an allegation that the necessary information lies within the defendant's control."); Bender II, 686 F. Supp. 2d at 53 (same).

Second, Relator has clearly alleged lack of access to necessary information in his briefing on the Motion to Dismiss. Rel. Opp'n 37. While it is true that by and large the Third Amended Complaint lacks any such allegation, for Rule 9(b) purposes, courts have allowed plaintiffs to allege lack of access to necessary information in their opposition briefs. Bender II, 686 F. Supp. 2d at 53 ("While it is generally understood that the complaint may not be amended in legal memoranda that are submitted as opposition to motions for dismissal . . . courts have allowed, for Rule 9(b) purposes, a party to supplement its complaint through such legal memoranda for the sake of judicial economy."(citation and internal quotations omitted)). Thus, it is clear, based on this case law, that Relator's pleadings on "information and belief" satisfy Rule 9(b).

Finally, with regard to the Perara Group scheme, Relator's Complaint: (1) details the nature of the scheme; (2) alleges the specific contracts that were the subject of the scheme; (3) clearly states that the scheme began after he left Kane Company and continues "until the present time;" and (4) connects the fraudulent scheme to demands for payment to the Government. Id. ¶¶ 10, 54, 55, 66, 104, 111-12. Although the Complaint does not specify the role Defendants John Kane, Ronald Meliker, and other Kane Company employees played in the fraudulent plan, given the other details provided, Defendants are not disadvantaged by Relator's failure to include this information in his Complaint. Cf. Folliard, 722 F. Supp. 2d at 32.

In sum, Plaintiffs' allegations provide sufficient detail to satisfy Rule 9(b)'s overriding purpose of guaranteeing Defendants "'sufficient information to allow for preparation of a response.'"[30] Martin-Baker, 389 F.3d at 1256 (quoting Cannon, 642 F.2d at 1385). "While significant details which will be necessary for plaintiff[s] to succeed on the merits of the case are indeed absent, these details are not necessary at this very preliminary stage of litigation." Allen, 309 F. Supp. 2d at 47 (emphasis in original). Plaintiffs "must be allowed to fill in those details [through] the

---

[30] Since Defendant Kane Company has already filed an Answer as well as various affirmative defenses and counterclaims in this case, it is now clear that the Company has received sufficient notice to defend against Plaintiffs' claims.

discovery process . . . ." Id. Contrary to Defendants' claim, these allegations do not require Defendants to submit to overly burdensome discovery or allow Plaintiffs to conduct a "fishing expedition." Defs.' Reply 2,7. Rather, on the basis of Plaintiffs' detailed allegations, the Court is confident that "[d]iscovery can be pointed and efficient." Folliard, 722 F. Supp. 2d at 33.

For the foregoing reasons, the Court concludes that Plaintiffs' fraud allegations meet the requirements of Rule 9(b). Accordingly, the Court **denies** Defendants' Motion to Dismiss Plaintiffs' FCA fraud claims on these grounds.

### B.   Relator's Retaliation Claim Under the FCA Fails to State a Claim under Rule 12(b)(6)

Relator has accused Defendant Kane Company of violating Section 3730(h) of the FCA by retaliating against him in response to his filing of the instant qui tam action and participation in the Government's investigation of this case. 3d. Am. Compl. ¶ 130. These alleged retaliatory acts include: (1) the filing of counterclaims in 2009 in this case against Relator that "had no basis in fact;" (2) the making of defamatory and disparaging statements in 2009 and 2010 about Relator to the press and other third parties; and (3) Defendant John Kane's alleged impersonation of Relator and the posting of Relator's phone number on the website, Craigslist.com. 3d. Am. Compl. ¶¶ 72-97, 100, 129-132.

In response to Relator's claim, Defendants argue that these alleged retaliatory activities occurred well after Relator's

employment with Kane Company had ended and are, therefore, not cognizable under Section 3730(h). Defs.' Mot. 12-13; Defs.' Supp. Reply 2-5.

Under Section 3730(h) of the FCA, an employee who has been discriminated against for engaging in a protected activity may bring a civil action against her employer. The statute provides that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against <u>in the terms and conditions of employment</u> because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h) (emphasis added).

While few courts have addressed whether Section 3730(h) applies to cases of post-employment retaliation, this Court has previously ruled on this issue. <u>See</u> <u>U.S. ex rel. Head v. Kane Co.</u>, 668 F. Supp. 2d 146, 152 n.5 (D.D.C. 2009). In that opinion, the Court rejected the Government's argument that Defendant Kane Company's counterclaims against Relator should be dismissed as contrary to the "spirit" of Section 3730(h). <u>Id.</u> Specifically, the Court held that "[b]ecause Head was terminated prior to the filing of this Complaint, § 3730(h) does not apply to this action." <u>Id.</u> As the issue was not central to the arguments made by the parties

at that time, the Court did not discuss it in any detail. However, having considered the parties' recent round of briefing on this issue, the Court will affirm its earlier holding and elaborate on the reasons for reaching its conclusion.

In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146 (1992). In order to defeat application of this cannon of statutory construction, a party must "show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it." Engine Mfrs. Ass'n v. EPA, 88 F.3d 1075, 1089 (D.C. Cir. 1996).

In the Court's earlier opinion, it emphasized the statutory language of Section 3730(h), particularly the phrase "in the terms and conditions of employment." Head, 668 F. Supp. 2d at 152 n.5. The plain language of this phrase clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job.[31] Relator has

---

[31] Relator cites to a handful of FCA cases to bolster his argument. Rel. Opp'n 41-42 n.23. However, these cases all involve retaliation claims for unlawful termination, which obviously do relate to the "terms and conditions of employment." Therefore, they are totally distinguishable and do not support Relator's position. Georgandellis v. Holzer Clinic, Inc., 2:08-cv-626, 2009 WL 1585772

(continued...)

not provided the Court with any persuasive authority that would

support a contrary ruling.[32]

---

[31](...continued)
(S.D. Ohio June 5, 2009)(case involving FCA retaliation claim for unlawful termination); Machado v. Sanjurjo, 559 F. Supp. 2d 67 (D.P.R. 2008)(same); Nguyen v. City of Cleveland, 121 F. Supp. 2d 643 (N.D. Ohio 2000) (same); U.S. ex rel. Kent v. Aiello, 836 F. Supp. 720 (E.D. Cal. 1993) (same).

[32] Relator relies heavily on cases construing the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Rel. Opp'n 40-41. As Relator accurately notes, some cases in this Circuit have recognized post-employment retaliation claims, even those which did not relate to the "terms and conditions of employment," under these statutes. See Rochon v. Gonzalez, 438 F.3d 1211 (D.C. Cir. 2006); Passer v. Am. Chem. Soc'y, 935 F.2d 322 (D.C. Cir. 1991).

However, Relator has failed to demonstrate that this case law mandates recognition of the kind of post-employment, non employment-related FCA retaliation claim alleged in this case.

First, unlike the FCA, the retaliation provisions of Title VII and the ADEA do not contain language limiting their scope to the employment context. As Relator's proffered case law demonstrates, it is primarily for this reason that courts have construed the anti-retaliation provisions of Title VII and the ADEA to include actions beyond the terms and conditions of employment. See Burlington N. and Santa Fe Ry., Co. v. White, 548 U.S. 53, 1265 S. Ct. 2405 (2006) (holding that Title VII's anti-retaliation provision lacks language limiting the statute to "the terms and conditions of employment," and it therefore covers employer actions that cause harm outside the workplace and that do not directly affect employment).

Second, the Title VII and ADEA cases cited by Plaintiff which have recognized post-employment retaliation, involve plaintiffs who had raised discrimination and/or retaliation claims while still employed. See Rochon, 438 F.3d 1211; Passer, 935 F.2d 322. By contrast, in this case, Relator has not alleged that he engaged in any FCA-protected activity while an employee at Kane Company, that his 2005 termination by Kane Company was retaliatory, or that he was otherwise discriminated against by Defendant Kane Company or

(continued...)

For the foregoing reasons, the Court holds that Section 3730(h) does not apply to retaliatory actions Defendant Kane Company allegedly took against Relator after his employment with the Company ended and which did not involve "the terms and conditions of [his] employment."[33] Accordingly, the Court will **grant** Defendants' Motion and dismiss this claim for failure to state a cause of action under Rule 12(b)(6).

### C. Supplemental Jurisdiction over Relator's State Law Claims Is Proper

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Relator's state law claims as those claims "are not sufficiently related to the FCA claims." Defs.' Mot. 13 n.6; Defs.' Reply 18-19 & n.19. Relator responds that supplemental jurisdiction is proper because of "the overlap in facts, witnesses, and parties." Rel. Opp'n 2.

Although Relator's Complaint does not specify the basis for the Court's jurisdiction over these claims, it is clear that 28 U.S.C. § 1367 provides such jurisdiction. Under that provision, "in

---

[32](...continued)
its officials while he was employed at the Company.

[33] Relator also argues for recognition of his retaliation claim on the grounds that "a primary purpose of anti-retaliation provisions" is to maintain "unfettered access to statutory remedial mechanisms." Rel. Opp'n 41. While Relator has a strong policy argument, "the court's role is not to 'correct' the text so that it better serves the statute's purposes, for it is the function of the political branches not only to define the goals but also to choose the means for reaching them." Engine Mfrs. Ass'n, 88 F.3d at 1089.

any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

In order for a federal and state law claim to form part of the "same case of controversy," the "claims must derive from a common nucleus of operative facts." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725, 86 S. Ct. 1130 (1966). Claims may be said to "derive from a common nucleus of operative facts" where plaintiff would be expected to try them all in one judicial proceeding, such as when they involve common issues of proof and the same witnesses. <u>Id.</u>; <u>Reuber v. United States</u>, 750 F.2d 1039, 1048 (D.C. Cir. 1984), <u>overruled on other grounds by</u> <u>Kauffman v. Anglo-Am. Sch. of Sofia,</u> 28 F.3d 1223 (D.C. Cir. 1994). In applying this standard, courts should be guided by considerations of judicial economy as well as convenience and fairness to the parties. <u>Reuber</u>, 750 F.2d at 1048.

In this case, Relator's state law claims derive, in large part, from allegations that Defendants took various unlawful actions against Relator arising from his decision to bring the instant <u>qui tam</u> action. 3d. Am. Compl. ¶¶ 72-97, 100, Counts 5, 7-12. Relator's FCA and state law claims, therefore, do arise from a

common nucleus of facts and are properly tried in the same case. Accordingly, principles of judicial economy and fairness to the parties mandate the exercise of the Court's supplemental jurisdiction.

For the foregoing reasons, the Court **denies** Defendants' Motion to Dismiss Relator's state law claims for lack of supplemental jurisdiction.

## IV. Conclusion

For all the reasons stated herein, Defendants' Motion to Dismiss is **granted** in part and **denied** in part. Specifically, pursuant to Rule 12(b)(6), the Court **grants** Defendants' Motion to Dismiss Relator's FCA retaliation claim as well as Relator's claim that Defendants Kane Company, John Kane, and Ronald Meliker conspired together to violate the FCA. The Court **denies,** pursuant to both Rule 9(a) and 12(b)(6), Defendants' Motion to Dismiss Plaintiffs' remaining FCA fraud claims and Relator's state law claims.

An Order will accompany this Memorandum Opinion.

July 25, 2011                  /s/_____
                               Gladys Kessler
                               United States District Judge

**Copies via ECF to all counsel of record**